Powell vs. Boring.

THOMAS S. POWELL, plaintiff in error, vs. JESSE BORING, defendant in error.

*The evidence in this case showed a contract between the parties for a specific sum, and the Court committed no error in refusing to charge upon the subject of fraud.*

Assumpsit.    In Fulton Superior Court.    Tried before Judge WARNER.    October Term, 1866.

In 1857, Dr. Boring, the defendant in error, was one of seven Professors constituting the Faculty of the Atlanta Medical College. The College was a corporation, chartered by the State of Georgia, and the land upon which the College building stood was vested in Trustees. The building and apparatus had been paid for by the Dean of the Faculty—partly out of funds which came into his hands from the fees of students, which was the common property of all the Professors, and partly out of money borrowed by the Dean on his own credit. The amount thus expended out of fees was $957.00 to the share of each Professor; and as matters stood, the aggregate sum constituted a debt in favor of the Professors, as a body, against the Trustees of the corporation, and was secured, or to be secured, by a lien upon the College property. The Dean was, himself, one of the Professors and the common agent of all the Faculty for receiving and disbursing money. Fees of students were paid to him, and when not paid, notes were given therefor, payable to him as Dean. The notes remained in his hands, undivided, to indemnify him for the money borrowed on his own credit, and expended as above. Collections made upon them, from time to time, were subject to be applied to that debt. The share of each Professor in these notes amounted, in October, 1857, nominally, to twelve or fifteen hundred dollars, but some of the notes were worthless. Another item of property which the Faculty owned in common, was a Medical Journal, conducted by the Professors, without direct pecuniary profit, but for the notoriety which it gave to the College, and the resulting incidental benefits to the Faculty.

On the 18th of July, 1857, Dr. Boring, writing from La-Grange, addressed a letter to Dr. Powell, at Sparta, from which the following is an extract:

"I am in doubt as to my future course, but am fixed in my purpose that I will not, longer than the close of the present session, work for bricks and mortar, while my family and creditors are the sufferers thereby. I am pretty well determined to visit Texas the coming winter, and now think I shall settle there. My inclination is to settle in Galveston and go into the Drug business. I must do better than I am now doing. Suppose I manage to divide my Chair, and tender you the Diseases of Women and Children, I continuing in that of Obstetrics. Could you—would you, take all my College property, leaving me simply Professor in that department, but not a property holder. I could and would still fill my course, even from Texas, in case my colleagues should think it best for the College. My entire interest at the close of the present year will probably amount to $1500 to $1800."

Dr. Powell replied to this letter on the 22d of July, saying: "I am sorry you are so much inclined to go West, and hope it can be made to your interest to continue your connection with the College; and if my buying your interest in the College building, &c., &c., will enable you to do so, you can rest assurred I will make the effort, if"—(going on to express conditions as to the consent of the other members of the Faculty, to a division of the chair, and as to the distribution of fees.)    *    *    *    *    "By this arrangement you would only be out the interest of half of the amount I give you for your interest in the College, &c. I would like for you to write me the cost of the College, &c., and the amount that will cover your entire interest, &c.    *    *    *    The whole matter is now in your hands. If you can make the arrangement, I will raise the money."

On the 24th of September following, Dr. Boring wrote to Dr. Powell, that he had forwarded his resignation to the Faculty, and had recommended Dr. Powell to them to fill

his chair, adding : "In the event of your election, I desire, as soon as practicable, to close the business, as I am directing my plans and movements for Texas, the coming winter."

Dr. Powell replied on the 30th of September, saying, among other things : " As soon as I am informed of my election, and of the amount I am to pay you, I shall go to work to raise it."

On the 6th of October, Dr. Boring wrote Dr. Powell, that he had, at the request of the Faculty, reconsidered his resignation, but had determined to repeat the tender of it, and would so write the Faculty that night. He added : "I am preparing to leave for Texas, on an exploration trip, about the 6th of November, and expect to remove in the winter. My property and claims in the College will cost $2,500. I have drawn nothing from the last Lectures, (amounting to $1,600–$1,800,) and but a part from the two preceeding sessions. The whole is really more than $2,500, but will not all be realized, yet, the property and place are worth more. In view of all the circumstances, I have determined to make a total transfer of property, notes and all, and to put them at $2,500, as a fair medium value. This amount I must realize the coming winter, or have it so as to answer the purposes of money."

On the 23d of October, Dr. Powell wrote to Dr. Boring, saying that he had just returned from Atlanta, and read Dr. Boring's letter ; that the Faculty had accepted the latter's resignation, and agreed to recommend the former to the Trustees to fill the chair.

On the 31st of October, he wrote again to Dr. Boring, as follows : "I received to-day the announcement of Lectures in the Atlanta Medical College for the Session of 1858, with my name inserted as Professor of Obstetrics, and I presume by that, all is right; and I am now trying harder than any poor fellow you ever saw, to raise you some money." And on the 3d of November, he wrote as follows : "Dr. Westmoreland informed me that the amount of money you have in the College building is $957.00, and as I presume you are

in want of money, I have enclosed you a check on the Plant-
ers' Bank of Savannah for that amount, for which you will
please send me your receipt.   I trust you will soon be free
from pecuniary troubles, and that you may succeed · in all
your new plans."

Dr. Boring enclosed to Dr. Powell, on the 9th of Novem-
ber, a receipt for this remittance, the receipt expressing that
it was in part payment for his interest in the property, "real
and perishable" in the Atlanta Medical College.   At the
same time, he wrote thus: "Allow me to suggest that it
may be well for us to complete the arrangement of our busi-
ness, especially as I am aiming, as soon as possible, to bring
my business to a close in this country.   You can forward
your note or notes, maturing at or about the 25th December
next, and I will forward you a transfer of my College inter-
est, real and perishable.

In reply to this letter, Dr. Powell wrote on the 16th of
November: "I have requested the Dean to furnish me and
yourself a full and clear statement of your real and tangible
interest in the College, and furnish me with the amount yet due
you.   As soon as I hear from him, you shall hear from me."

Some further correspondence followed, in which Dr.
Boring alleged, that in all the negotiations, written and ver-
bal, he had, whenever the terms were alluded to, put his in-
terest at a stipulated price, and that Dr. Powell had never
intimated an objection.   He stated, also, that the check sent
to him was still in his hands, undrawn, and must remain so,
until the necessary transfers were made.   Dr. Powell, on his
part, expressed regret that a misunderstanding had occurred.
He said that, in offering to take Dr. Boring's interest in the
College, if elected, he meant that he would refund the
amount Dr. Boring had paid in for the College-building,
apparatus, etc., and never supposed, for a moment, that he
would be expected to cash his portion of the notes; that he
never, until recently, knew there were any notes due for
tickets, and that it was a new idea to him, as he presumed it
was to any Doctor who had graduated ten years previously,

for students to attend medical lectures on a credit; that, as to what was due Dr. Boring from the proceeds of the last lectures, he supposed the latter would settle that with the Dean; and that he, himself, expected to settle by the books, not understanding that he had purchased at any specific sum.    He offered, finally, to submit the whole matter to the Faculty, and to resign if they did not sustain his construction of the transaction.    He closed, by requesting Dr. Boring to hand the check to Dr. J. G. Westmoreland.    The correspondence, so far as it appears, concluded with a letter from Dr. Boring, dated March 23, 1858, declining a reference to the Faculty, and proposing an arbitration before five men, two to be chosen by each party, and the fifth by these four.

In September, 1860, the present action was brought by Boring against Powell, to recover $1.543, the balance of $2.500, after deducting the $957 paid and receipted for as above.

At the trial, the foregoing matters, with some others less important, appeared in evidence.    It also appeared that Powell retained Boring's Chair in the College; that he exercised the rights of a member of the Faculty with respect to the Medical Journal, and that an appropriation was made by the State, which enabled the Trustees of the College to pay its debts, one of which was the claim of $957 in favor of Boring, for his share of the expenditures towards erecting the building, etc., and that the money due on this claim was paid to and received by Powell.    It further appeared, that some time after Boring went out of the Faculty, and Powell went in, a division was made of the notes held by the Dean, and that the share set apart to the Chair of Obstetrics, (some twelve or fifteen hundred dollars in amount, as stated heretofore,) remained in the Dean's hands, never called for by either Boring or Powell.    Also, that the Dean, at the time of the trial, had collected upon these notes, after the division, from one to four hundred dollars.

Counsel for Powell requested the Court to charge the

Powell vs. Boring.

jury, that if they believed there was a contract made, and the defendant was induced to make it by the fraudulent representations of Dr. Boring, as to the value of the assets of the College, when Dr. Boring had a better opportunity of knowing their value than Dr. Powell, the parties thereby treating upon unequal terms, it was a fraud upon the defendant, and he is relieved from further performance. The Court refused so to charge; and, after verdict for the plaintiff, the defendant moved for a new trial, on the ground of such refusal, and because the verdict was contrary to the evidence, and to the weight of the evidence—also, because the plaintiff, if a contract was made, did not comply with the same by turning over the notes and assets in question, or by offering to do so.

A new trial was refused, and this is complained of.

HAMMOND & MYNATT, for plaintiff in error.

HAMMOND & SON, and BLECKLEY, for defendant.

LUMPKIN, C. J.

This bill of exceptions is brought by Dr. Powell, through his counsel, to reverse Judge WARNER's decision, in refusing a new trial in this case.

Dr. Boring was one of the Faculty of the Medical College at Atlanta, and, as such, had an interest in the site, buildings, with the appurtenances; and, also, was joint owner of sundry notes, given by the students for their professional tuition. These notes were held by Dr. Westmoreland, as Dean of the Faculty, for the use of the Faculty. The Faculty were also the proprietors of a Medical Journal, published, not so much for the pecuniary compensation it yielded, as the reputation which it brought to the Institution.

Dr. Boring having determined to go West, he and Dr. Powell commenced a negotiation, which was conducted by a correspondence between them, which is spread out in this

record. It resulted in this litigation. Dr. Boring claims that he sold out his property and place in the College for $2.500; that Dr. Powell paid him $957, and this suit is brought to recover the balance of the purchase money.

Dr. Boring wrote Dr. Powell on the 6th of October, 1857, stating that he had determined to go to Texas; that his property and claims in the College would cost $2.500. Dr. Boring also stated in this letter, that he had drawn nothing from the last lectures, (amounting to $1.600 or $1.800) and but part from the two preceding sessions; that the whole property was really worth more than $2.500, but it would not all be realized, yet that the *property* and *place* were worth more; that, in view of all the circumstances, determining to make a total transfer of property, notes and all, and to put them at $2.500, as a fair medium value. This amount, he stated, he must realize the coming winter, or to have it so as to answer the purposes of money.

On the 23d of October, Dr. Powell wrote, saying that he had just returned from Atlanta, and that he had read Dr. Boring's letter; that the Faculty had accepted Dr. Boring's resignation, and had agreed to recommend Dr. Powell to the Trustees to fill Dr. Boring's Chair. On the 31st of the same month, he wrote again, as follows: "I received to-day the announcement of Lectures in the Atlanta Medical College, for the session of 1858, with my name inserted as Professor of Obstetrics, and presumed all was right; and I am now trying harder than any poor fellow you ever saw to raise you some money." On the 3d of November, he wrote as follows: "That the amount of money you had in the College building is $957, and as I presume you are in need of money, I have enclosed you a check on the Planters' Bank of Savannah for that amount, for which you will please send me your receipt." (This would have been the share of Dr. Boring of the appropriation made by the State, to discharge the debt which the Faculty had incurred in establishing this Institution; and it was paid over to Dr. Powell under his purchase from Dr. B.) "I trust you will soon be free

from pecuniary troubles, and that you may succeed in all your new plans."

On the 9th of November, Dr. Boring inclosed a receipt for the remittance, the receipt expressing that it was *in part payment* for his interest, *real* and *perishable*, in the Atlanta Medical College. At the same time he wrote thus : "Allow me to suggest, that it may be well for us to complete the arrangement of our business, especially as I am anxious, as soon as possible, to bring my business to a close in this country. You can forward your note, or notes, maturing at, or about the 25th of December next, and I will forward you a transfer of my College interest, real and perishable." And now, for the first time, Dr. Powell intimated his surprise, that Dr. Boring should have understood him as agreeing to pay any *specific sum* for the purchase, and especially, that he should be supposed to have included the fee notes of the students in the contract.

If this was not the proposition submitted by Dr. Boring, and accepted by Dr. Powell, we ask what did he purchase ? This was the distinct offer made him by Dr. Boring, and accepted, impliedly, at least, as strong as language could express it. All the subsequent arrangements seem to have been predicated upon this understanding, and many things that afterwards transpired, will be found meaningless, upon any other hypothesis.

Dr. Powell complains that Dr. Boring, in whom he implicitly confided, abused his confidence and misled him, either willfully or through ignorance, and that especially he misrepresented the amount of fee notes owing to him. This is rather strange, when in one of his letters, Dr. Powell states, that he never supposed, for a moment, that he could be expected to cash Dr. Boring's portion of these notes. That he never knew, until recently, there were such notes. That it was a new idea to him, that students could attend Lectures on credit. How to reconcile this with the letter of Dr. Boring, written on the 6th of October, is rather inexplicable. In this letter Dr. Boring says: "I have determined to make

a total transfer of property, *notes* and all, and to put them at $2,500, a fair medium value," and it will be recollected, that Dr. Powell was in Atlanta, when this letter was written. The Dean of the Faculty, Dr. Westmoreland, held these notes, and it must be supposed that Dr. Powell could learn from him and other members of the Faculty, the true condition of the College, its future prospects, &c.    He was greatly negligent, if he failed to do so, and having access to reliable information, upon this and all other subjects connected with the College equally so with Dr. Boring himself— he cannot impute either fraudulent representations, or concealment to Dr. Boring.

It may be that neither of these gentlemen are very shrewd in money matters—it is no disparagement to them to say so. It must be recollected, also, that many of the fee notes, supposed to be good at the time, have been lost by the great financial crash which shortly afterwards ensued.    The times, unparalleled in the history of our country, may have had much to do with the dissatisfaction attending this transaction.

We cannot condemn the presiding Judge for refusing to give the charge as requested by defendant's counsel, and therefore affirm the judgment of the Court below, in not granting a new trial.

Judgment affirmed.